UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JANINE C. ALBERTSON, individually; BNA, a minor, individually; and the ESTATE OF JAMES L. ALBERTSON, | Case No. 4:09-cv-00598-CWD |
| Plaintiffs, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| FREMONT COUNTY, IDAHO, a political subdivision; UNITED STATES OF AMERICA, the government of the United States of America, MICHAEL T. BENSON, individually; and DOES A through J, fictitiously named, | |
| Defendants. | |

**INTRODUCTION**

On February 1, 2009, James Albertson sustained fatal injuries while snowmobiling

on a groomed trail within in the Caribou-Targhee National Forest located in Fremont

County, Idaho. The accident occurred when Mr. Albertson drove onto the state highway

at an intersection in the trail, and collided with a passing mini van. Plaintiffs – Janine

Albertson (the deceased's wife), BNA (the minor child of the deceased), and the Estate of

James Albertson – seek relief against Fremont County and the United States of America

(the "United States") for wrongful death and negligence, alleging that the defendants failed to maintain the snowmobile trail in a reasonably safe condition and, in particular, failed to place or maintain traffic control signals and warning signs indicating hazardous or dangerous conditions.

Before the Court are Fremont County's Motion for Summary Judgment, (Dkt. 80), and the United States' Motion for Summary Judgment. (Dkt. 88.) Defendants argue, among other things, that they are immune from suit under Idaho's Recreational Use Statute, which provides immunity to those who make their land available to the public for recreational use without charge. Fremont County and the United States also have filed motions to strike or disregard several exhibits that Plaintiffs submitted in opposition to Defendants' motions for summary judgment. (Dkt. 102, 106.)

The parties presented oral argument on the motions on October 20, 2011. At the conclusion of the hearing, the Court ordered supplemental briefing on an issue raised by the United States in its reply brief in support of its motion for summary judgment. All of the issues now have been fully briefed and the motions are ripe for adjudication. Having fully reviewed the motions, the parties' memoranda and supplemental materials filed in support of each party's position, and for the reasons discussed below, both of Defendants' motions for summary judgment will be granted as to Plaintiffs' claims for negligence per se and denied as to Plaintiffs' claims for ordinary negligence. Defendants' motions to strike will be denied.

## BACKGROUND

The Caribou-Targhee National Forest, managed by the United States Forest Service (the "Forest Service"), contains over 500 miles of groomed winter recreational snowmobile trails. Prior to February 1, 2009, the date Mr. Albertson sustained his fatal injuries, the Forest Service and Fremont County entered into various agreements concerning the operation and maintenance of a winter trail system within the forest.

Plaintiffs claim that these agreements created duties on the part of the Forest Service and Fremont County, and that Defendants breached their duties by failing to maintain the snowmobile trails in accordance with the agreements. During the 2008-2009 winter season, and at the time of the accident in this case, the Forest Service, Fremont County and the Idaho Department of Parks and Recreation were operating under a Cost-Share Agreement. (Dkt. 81 at 8.) The purpose of the Cost-Share Agreement was "to document the cooperation among the parties for the groomed snowmobile trails program within the boundaries of State Designated Snowmobile Areas #22a and 22b in Fremont County." (*Id*.) Pursuant to the Cost-Share Agreement, the Forest Service and Fremont County mutually agreed to develop and implement an Annual Operating Plan and a Sign Plan. (*Id*. at 11.)

The Cost-Share Agreement and the Annual Operating Plan assign various responsibilities related to the operation and maintenance of the trail system. For instance, the Annual Operating Plan provides that "The County Shall . . . [a]ssist the Forest Service with trail maintenance, as necessary, to keep the snowmobile trails open and safe[,]" and "[i]n cooperation with the Forest Service, [the County shall] mark trails, install sign[s] on

trails and trailheads as necessary and as designated in the attached Sign Plan." (Dkt. 98-13) (capitalization omitted). The Sign Plan, referenced in both the Cost-Share Agreement and the Annual Operating Plan, lists the junctions along the trail system and sets forth the type of signs required to be installed at each junction. (Dkt. 98-12.) The Annual Operating Plan also requires the Sign Plan to be in compliance with the federal standards set forth in a document entitled *EM-7100-15, Standards for Forest Service Signs and Posters*. (*Id*.)

The parties, in their briefing, directed the Court to several other documents concerning the installation of, and standards governing, signs along the snowmobile trail. These documents relate to the alleged legal obligations of the Forest Service and Fremont County and will be addressed in more detail below in the Court's discussion of the parties' duties.

Pursuant to the Cost-Share Agreement, the costs of operating the groomed winter trail program are shared among the County, the State of Idaho, and the Forest Service. (Dkt. 81 at 8.) It is undisputed that non-resident and resident snowmobile owners are charged mandatory registration fees for use of snowmobiles within the State of Idaho. *See* Idaho Code §§ 67-7103 and 67-7104. The fees are collected by vendors and then remitted to the Idaho Department of Parks and Recreation. Idaho Code § 67-7106. Snowmobile owners can designate a county or snowmobile area to receive a portion of their registration fee.

Under the Cost-Share Agreement, the Idaho Department of Parks and Recreation is

required to "disburse snowmobile registration funds to the County for use in the operation and maintenance of the grooming program." (*Id*.) Moreover, the Cost-Share Agreement provides for the institution of a County Snowmobile Advisory Committee, which includes representatives of the Forest Service, and advises "on the use and expenditures of funds for the grooming program." (Dkt. 81.)

Plaintiffs allege that the Forest Service "has in fact received a portion of the funds disbursed to Fremont County to purchase traffic counters, print trail maps, pay for law enforcement on the trails by the Forest Service and subsidize [the Forest Service's] law enforcement training." (Pl.s' Statement of Material Facts in Dispute with the United States, Dkt. 98-2 at 3.) It is undisputed that Mr. Albertson paid a registration fee of $32.50 on January 30, 2009, and designated an area within Fremont County as the use area to receive a portion of his fee distributed under the above program.

Idaho State Highway 20 is the main thoroughfare for vehicular traffic through Fremont County and, at various locations, crosses the groomed winter recreation snowmobile trails located in the Caribou-Targhee National Forest. One of those crossings is at Junction 57, where the Chick Creek trail crosses Highway 20 near Ponds Lodge, Idaho. The Sign Plan called for three signs on each side of Highway 20 – a Stop sign, a Stop Ahead sign, and an Intersection Ahead sign.

On the morning of February 1, 2009, a group of twelve recreational snowmobilers, including James Albertson, were riding snowmobiles from West Yellowstone, Montana, to Ponds Lodge. As Mr. Albertson traveled westbound on Chick Creek Trail approaching

Junction 57, he rode from the trail onto Highway 20 and collided with a passing van

driven by Michael Benson. The injuries sustained during the collision resulted in Mr.

Albertson's death.

Following Mr. Albertson's death, Plaintiffs filed an action against Fremont

County, the City of Island Park, and Michael Benson.[1] (Dkt. 1.) The City of Island Park

was dismissed from the case, and Plaintiffs later sought, and were granted, leave to add

the United States as a defendant.[2] (Dkt. 45.) In their Second Amended Complaint, (Dkt.

43), Plaintiffs allege that the Forest Service and Fremont County failed to operate and

maintain the snowmobile trail in a reasonably safe condition and that Mr. Albertson's

death was the result of the Defendants' negligence. Specifically, Plaintiffs allege that, of

the three signs required to be installed by the Sign Plan, only the Stop sign was present on

the day of the accident and it was obscured by a pine tree and could not be seen by

snowmobilers approaching the intersection. Plaintiffs further allege that two additional

warning signs (a Stop Ahead sign and an Intersection Ahead sign) should have been

---

[1] The Court granted Mr. Benson's motion for summary judgment and dismissed Plaintiffs' claims against him on July 27, 2011. (Dkt. 78.)

[2] Plaintiffs initially sought leave to add the Forest Service as a defendant. (Dkt. 26.) The Forest Service thereafter filed a motion to dismiss based on the contention that the United States (rather than the Forest Service or the Island ark Ranger District) was the proper party under the Federal Tort Claims Act. (Dkt. 35.) Plaintiffs then sought leave to amend their complaint to add the United States as a defendant. (Dkt. 38.) On December 2, 2010, the Court granted the Forest Service's motion to dismiss and Plaintiffs' motion to amend. (Dkt. 45.) The United States is now the sole federal defendant in this case. (*See* Second Amended Complaint and Demand for Jury Trial, Dkt. 43.)

installed in accordance with the Sign Plan, but that on the day of the accident neither was present. Finally, Plaintiffs contend that Defendants' failure to install and maintain the appropriate signs on the trail in accordance with the Sign Plan (and other standards governing the placement of signs on the trail) was exasperated by the fact that the trail was laid out and groomed with a sharp right-hand turn immediately prior to the Stop sign. Plaintiffs claim that the lay out of the trail created a dangerous condition, making it hard for snowmobile operators to appreciate the danger of the approaching highway and further obscuring the already obscured Stop sign at the intersection.

It is disputed whether some type of warning sign (other than the Stop sign at the intersection) was properly posted at the time of the accident. Plaintiffs claim that no warning sign was posted and the United States recognizes in its motion for summary judgment that, "[s]hortly after the accident, Fremont County discovered that the stop ahead sign that had been posed east of the highway crossing near Junction 57 was missing or knocked down." (Dkt. 88-1 at 4.) The United States' motion for summary judgment also states that "[n]o one knows who knocked the stop ahead sign down or when that sign was knocked down." (*Id*.) The parties have submitted a significant amount of deposition testimony and other evidence in support of their positions concerning whether the warning sign was (or was not) properly posted at the time of the accident. These facts, as they relate to the disposition of the motions presently before the Court, will be addressed below.

## DISCUSSION

**1.     Defendants' Motions to Strike**

In response to the motions for summary judgment filed by the United States and

Fremont County, Plaintiffs filed numerous exhibits in support of their position that

neither defendant is entitled to judgment as a matter of law. (Dkt. 98.) All of the exhibits

are attached to the declaration of Plaintiffs' counsel, William L. Mauk. (Dkt. 98-3.)

Fremont County and the United States both move the Court, through separate motions, for

an order striking several of the exhibits attached to Mr. Mauk's declaration. (Dkt. 102,

106.) Defendants argue that much of the testimony and many of the exhibits submitted

through Mr. Mauk's declaration are either inadmissible or submitted in an inadmissible

form, and therefore should be stricken or disregarded by the Court when considering the

motions for summary judgment.[3]

Rule 56 of the Federal Rules of Civil Procedure requires that "affidavit[s] or

declaration[s] used to support or oppose a motion [for summary judgment] must be made

---

[3] The Court notes that "the Federal Rules of Civil Procedure do not provide for a
motion to strike documents or portions of documents other than pleadings." *U.S. v. Crisp*,
190 F.R.D. 546, 550 (E.D. Cal. 1999). Specifically, "a court may strike from a pleading
an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."
Fed. R. Civ. P. 12(f). Put simply, "[a] motion to strike is limited to pleadings." *Crisp*, 190
F.R.D. at 551 (citing *Sidney Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir.
1983). Pleadings are defined by Fed. R. Civ. P. 7(a). Exhibits attached to a declaration
filed in support of, or in opposition to, a motion for summary judgment are not pleadings.
*See Aftergood v. Central Intelligence Agency*, 355 F.Supp. 2d 557, 564 (D.D.C. 2005)
("Thus, by the plain terms [of] Rule 12(f), the rule cannot be used to strike an affidavit.").
In light of these rules, the motions to strike filed in this case will be construed as
objections to the materials filed by the Plaintiffs in support of their opposition to
Defendants' motions for summary judgment.

on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Rule 56 also provides that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Given the language of Rule 56(c), the Court of Appeals for the Ninth Circuit repeatedly has held that unauthenticated documents cannot be considered in opposition to a motion for summary judgment. *See*, *e.g.*, *Cristobal v. Siegel*, 26 F.3d 1488, 1494 (9th Cir. 1994). And, a statement in an attorney's affidavit that an exhibit is a "true and correct copy" has been held not to provide authentication where the attorney lacked personal knowledge to authenticate the document. *Beyene v. Coleman Sec. Serv., Inc.*, 854 F.2d 1179, 1182 (9th Cir. 1988).

Under Rule 56(e), if a party's materials in support or opposition to summary judgment fail to meet the requirements of Rule 56(c), the Court may:

(1) give an opportunity to properly support or address the fact;

(2) consider the fact undisputed for purposes of the motion;

(3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or

(4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

On October 7, 2011, the Court ordered expedited briefing on Defendants' motions to strike so that the motions to strike and the motions for summary judgment could be

argued by the parties, and considered by the Court, at the same time. (Dkt. 110.) In their response to Defendants' motions to strike, Plaintiffs filed supplemental materials, which largely cured the evidentiary deficiencies asserted by Defendants. Based on Plaintiffs' supplemental materials, the United States withdrew its objections to all but four of the exhibits attached to Mr. Mauk's declaration. Fremont County, on the other hand, has not withdrawn its objections and argues that, even if the deficiencies have been cured, the Court should nonetheless strike the exhibits because they were not properly filed in the first instance.

The Court heard oral arguments on Defendants' motions on October 20, 2011. During the hearing, the United States and Fremont County conceded that the alleged evidentiary defects related to the materials attached to Mr. Mauk's declaration largely had been cured. Having considered the parties' arguments and materials submitted on the motions, the Court finds that Plaintiffs' supplemental materials cured most of the evidentiary defects alleged by Fremont County and the United States in their motions to strike. To the extent that the alleged defects have been cured, the Court will not accept Fremont County's invitation to strike Plaintiffs' materials, which now meet the requirements of Rule 56(c), on the basis that they were not properly filed in the first instance. To the extent that Defendants maintain their objections to certain exhibits attached to Mr. Mauk's declaration (on grounds other than authentication or lack of

foundation, which have been cured), the challenged materials will be addressed below.[4]

### A.    *Expert Report of Kim Raap*

In opposition to Defendants' motions for summary judgment, Plaintiffs have submitted an expert report prepared by Kim Raap.  The report is attached to Plaintiffs' counsel's declaration as Exhibit A and filed with the Court on a compact disc. (Dkt. 98-3 at 3.) Fremont County and the United States both filed motions to strike the report on the ground that it had not been properly authenticated. As indicated above, Plaintiffs have filed supplemental materials laying the foundation for the expert report. (*See* Dkt. 110-4.)

Fremont County continues to oppose the Court's consideration of the expert report in connection with its motion for summary judgment, arguing that the Court should not consider the report because Plaintiffs did not properly authenticate the document in the first instance. As noted above, Rule 56(e) authorizes the Court to allow a party to cure evidentiary deficiencies associated with materials filed in support or opposition to a motion for summary judgment. Because Plaintiffs already have cured the evidentiary deficiency associated with Mr. Raap's report, the Court finds that it would not be

---

[4]  The United States originally objected to Exhibit 38 attached to Mr. Mauk's declaration. Exhibit 38 is a news article published in the Island Park News concerning Mr. Albertson's death and contains e-mail statements made by Fremont County Director of Parks and Recreation Tamra Cikaitoga. (Dkt. 98-7.) The United States maintained its objection to Exhibit 38, even after Plaintiffs filed their supplemental materials, with the following qualification: "To the extent the Plaintiffs are limiting their use of this exhibit to Ms. Cikaitoga's own statements and e-mail messages, the United States has no objection to this exhibit." (Dkt. 113 at 7.) Plaintiffs made clear at the hearing on the motions that their use of the exhibit is limited to Ms. Cikaitoga's statements and the United States withdrew its motion to strike that particular exhibit.

appropriate to disregard the exhibit in this case and Fremont County's opposition to the Court's consideration of the exhibit is overruled.

Aside from the report's alleged evidentiary deficiency, the United States objects to Mr. Raap's expert report on an additional ground. Specifically, the United States objects to statements contained in the report related to the layout and design of the snowmobile trail. Plaintiffs refer to Mr. Raap's report in their opposition to Defendants' motions for summary judgment and state that one of the issues in this case, as explained by Mr. Raap, involves a design defect in the trail system. Plaintiffs argue that this defect rendered the trail unsafe.

The United States argues that the "design" of the snowmobile trail was not raised in Plaintiffs' complaint and therefore should not be considered by the Court. The gist of the Unites States' argument is that Plaintiffs did not plead negligent design in their complaint, and that since the United States was not given notice of the "negligent design claim," Plaintiffs should not be allowed to raise the claim through Mr. Raap's expert report. Based on this argument, the United States "requests that the Court disregard, strike and/or deem waived any and all 'design allegations' from the record and preclude Mr. Raap from offering any opinions concerning the design, layout and/or alignment of any of the trails on the Forest, including Chick Creek Trail." (Dkt. 106 at 6.)

Like the United States, Fremont County argues that Plaintiffs may not raise this issue because it was not properly pled in Plaintiffs' complaint. Fremont County addresses the issue in its reply brief in support of its motion for summary judgment. (Dkt. 105.) The

County asks the Court to rule as a matter of law that Plaintiffs may not raise a negligence claim based on the "design" of the trail.[5]

For the reasons set forth below, the Court finds that the statements contained in Mr. Raap's expert report concerning the layout of the snowmobile trail do not exceed the scope of Plaintiffs' complaint. The United States' motion to strike portions of Mr. Raap's expert report, and Fremont County's request for a ruling that Plaintiffs may not raise the design issue, will therefore be denied.

Mr. Raap's report includes a section entitled "Conditions Present On February 1, 2009 Which Contributed To Mr. Albertson's Fatal Crash." (Expert Report of Kim Raap at 25-33, Dkt. 99.) In that section, Mr. Raap identifies three factors that he believes contributed to Mr. Albertson's death: (1) "Trail design, layout, and alignment"; (2) Trail signing, monitoring, and maintenance"; and (3) "Trail maintenance related to brushing and clearing." (*Id*. at 25-26.) Mr. Raap opines that the layout of the trail section at issue in this case created an unsafe condition and contributed to Mr. Albertson's accident. (*Id*. at 30.) Mr. Raap bases his conclusion on the fact that, due to the configuration of the trail, snowmobile riders were required to make an "abrupt turn in the trail before being confronted with the highway previously hidden from their view." (*Id*.) Mr. Raap also indicates that the turn in the trail made it difficult for riders approaching the highway to

---

[5] For the purposes of this order, the Court will treat Fremont County's argument as an objection to the report and consider it along with the United States' argument concerning the layout of the trail.

see the Stop sign at the intersection. (*Id*.) According to Mr. Raap, "immediately after negotiating the last bend in the approach route to the highway – riders must immediately turn their snowmobile to the right to 'square-up' with the Stop sign and highway crossing." (*Id*.)

The Court finds that Mr. Raap's opinions concerning the layout of the snowmobile trail do not exceed the scope of the allegations contained in Plaintiffs' complaint. Plaintiffs generally contend that the intersection of Highway 20 and the Chick Creek Trail constituted a dangerous condition that Defendants knew or should have known could cause serious injury or death. Plaintiffs allege in their complaint that Defendants had the "duty to operate and maintain the snowmobile trails in a reasonably safe condition, so as to minimize, if not eliminate, all obvious or appreciated hazards or dangers presenting a risk of death or serious injury." (Pl.s' Sec. Am. Compl. ¶ 61(a), Dkt. 43 at 12.) Plaintiffs' complaint also alleges that Defendants had the duty "to regularly and systematically inspect the public snowmobile trails . . . for unsafe, defective or dangerous conditions, including missing, damaged or obstructed traffic control and warning signs  and to remove or remedy such conditions, or to adequately warn the traveling public of such unsafe, defective and dangerous conditions." (*Id*. at ¶ 61(e).) Similarly, Plaintiffs' complaint alleges that "each of the governmental Defendants failed to develop, implement and take measures and precautions necessary, proper and prudent to protect Jimmy Albertson from the collision that caused his death." (*Id*. at ¶ 63.)

The Court recognizes, and Plaintiffs concede, that their complaint focuses on

Defendants' alleged failure to install and maintain the signs on Chick Creek Trail. However, the allegations in Plaintiffs' complaint are not limited to the signage issue. Plaintiffs' complaint refers to "unsafe, defective or dangerous conditions" and Defendants' duty to "remove or remedy such conditions." The complaint also alleges that Defendants had the "duty to operate and maintain the snowmobile trails in a reasonably safe condition, so as to minimize, if not eliminate, all obvious or appreciated hazards." This is precisely what Mr. Raap states that the Defendants failed to do.

Plaintiffs claim that Mr. Albertson did not appreciate the danger of the approaching highway and that his failure to appreciate the danger was caused by Defendants' failure to maintain the snowmobile trail in a reasonably safe condition. Plaintiffs' complaint focuses on Defendants' alleged failure to properly install and maintain the signs along Chick Creek Trail. The complaint also does, however, reference the "turn" Mr. Albertson made before coming within view of the intersection and its close proximity to the highway. (Pl.s' Second Am. Compl. at ¶ 32.) The complaint also references an accumulation of snow at the highway intersection and foliage obstructing the view of the existing Stop sign. These factual allegations, in combination with the duties alleged in the complaint as outlined above, adequately notified the Defendants for the purposes of Rule 8 of the Federal Rule of Civil Procedure that the condition of the trail – including its proximity and orientation to the highway – would be at issue.

The Court's conclusion is further supported by the statements of the Forest Sign Coordinator of the Caribou-Targhee National Forest, Tom Brown, who has testified that

the placement of signs along the snowmobile trail depends upon the "terrain features" of the approach, sight distance, the visualization triangle, trees and brush. (Brown Dep. 84/15-85/13, Dkt. 98-43.) In other words, the placement of signs, which is undisputedly the primary focus of Plaintiffs' complaint, is directly related to the terrain features of the trail, which the Court finds encompasses the layout of the trail.

B.    ***Photographs of Highway Crossing Sign***

The United States and Fremont County both object to Exhibits B and C attached to Mr. Mauk's declaration. (Dkt. 98-26 and 98-27.) The exhibits are photographs that Plaintiffs claim were produced by the Idaho Transportation Department in a companion state court case involving Mr. Albertson's accident. The photographs both show a yellow "Highway Crossing Ahead" sign lying on the ground. Defendants initially objected to the exhibits on the ground that they were not properly authenticated. In response, Plaintiffs filed the supplemental affidavit of Farrell Wray, who purports to have taken the photographs on July 14, 2009. (Dkt. 110-33.) Both Defendants continue to object to the photographs and point out that they were not taken until months after the accident. (Dkt. 112 at 7; Dkt. 113 at 7.) Given that the photographs were taken months after the accident, the United States objects to their relevance. Specifically, the United States argues that Plaintiffs have not supplied the foundation to determine "wether these two photographs accurately depict the sign that had been set in the ground adjacent to Chick Creek Trail prior to February 1, 2009 (as opposed to the temporary sign that was placed in a snowbank following the accident)." (Dkt. 113 at 7.)

**MEMORANDUM DECISION AND ORDER - 16**

Plaintiffs argued at the hearing on the motions to strike that the photographs are relevant because they tend to corroborate the factual allegation that the warning sign was buried under the snow at the time of the accident. Plaintiffs also assert that the photographs impeach the deposition testimony of a Fremont County trail groomer, who testified that he recalled seeing a "Stop Ahead" sign two days before the accident.

The Court finds that it is not necessary to address this evidentiary issue at this time. The record contains other materials supporting Plaintiffs' factual allegation that no warning sign was posted on the day of the accident and the Court is not required to rely upon the challenged photographs to find disputed material facts on this issue. If Defendants wish to challenge the relevance of the photographs under Rule 401 of the Federal Rules of Evidence, they may do so in a motion in limine.

### C.    *Deposition Excerpts of David Claycomb*

Both Defendants ask the Court to strike excerpts from the deposition of David Claycomb (a state of Idaho employee who was deposed in the pending state court companion case) because neither of the defendants in this case are parties to the state court action. In response, Plaintiffs direct the Court to *Gulf USA Corporation v. Federal Insurance Company*, 259 F.3d 1049 (9th Cir. 2001), in which the Ninth Circuit stated:

> Sworn deposition testimony may be used by or against a party on summary judgment regardless of whether the testimony was taken in a separate proceedings. *Curnow v. Ridgecrest Police*, 952 F.2d 321, 324 (9th Cir. 1991). Such testimony is considered to be an affidavit pursuant to Federal Rule of Civil

Procedure 56(c), and may be used against a party on summary judgment as long as the proffered depositions were made on personal knowledge and set forth facts that were admissible in evidence.

259 F.3d at 1056.

The United States conceded the point and withdrew its objection. (Dkt. 113 at 2.) Fremont County continues to argue, however, that the deposition testimony should be stricken. (Dkt. 112 at 8.) The Court disagrees. As the United States points out, the *dicta* cited by Plaintiffs from the *Gulf USA* case has been endorsed by the Ninth Circuit in a later opinion. *See Orr v. Bank of America, NT & SA*, 285 F.3d 764, 779 n.27 (9th Cir. 2002). Fremont County's objection to the Court's consideration of the deposition testimony of David Claycomb will therefore be overruled.

## 2.    Defendants' Motions for Summary Judgment

### A.    *Legal Standard*

Fremont County and the United States, through separate motions, move the court for an order granting summary judgment under Rule 56 of the Federal Rules of Civil Procedure and seek the dismissal of all of Plaintiffs' claims. (Dkt. Nos. 80 and 88.) Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the

record demonstrating the absence of genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  "If the party moving for summary judgment meets its initial burden of identifying for the court those portions of the material on file that it believes demonstrates the absence of any genuine issues of material fact," the burden of production shifts and "the non moving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *T.W. Electrical Service, Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quoting Fed. R. Civ. P. 56(e)).

**B.**     ***Immunity under the Idaho Recreational Use Statute***

Fremont County and the United States both argue that they are immune from liability under Idaho's Recreational Use Statute, I.C. § 36-1604.[6] The Recreational Use Statute ("RUS") provides immunity to those who make their land available to the public for recreational use without charge. The express purpose of the statute is to "encourage

---

[6]  The United States points out that, under the Federal Tort Clams Act, it may only be held liable for tort claims "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. As stated by the United States Supreme Court, "the test established by the Tort Claims Act for determining the United States' liability is whether a private person would be responsible for similar negligence under the laws of the state where the acts occurred." *Rayonier, Inc. v. United States*, 352 U.S. 315, 319 (1957).

owners of land to make land, airstrips and water areas available to the public without charge for recreational purposes by limiting their liability toward persons entering thereon for such purposes." I.C. § 36-1604(a). The statute confers immunity if three conditions are met: (1) the person or entity asserting immunity must be an "owner" within the meaning of the statute; (2) the owner must have permitted the person to enter the property "without charge"; and (3) the use of the property must be for recreational purposes. I.C. § 36-1604(d).[7]

There is no dispute that Mr. Albertson was using the land for recreational purposes. The remaining questions are whether Fremont County and the United States are "owners" of the land withing the meaning of the statute and whether Fremont County and the United States "charged" Mr. Albertson for using the property.

(1) *Whether Fremont County and the United States are "owners" within the meaning of the Idaho RUS*

_____

[7] The applicable provision provides as follows:

(d) Owner Assumes No Liability. An owner of land or equipment who either directly or indirectly invites or permits without charge any person to use such property for recreational purposes does not thereby:

1. Extend any assurance that the premises are safe for any purpose.

2. Confer upon such person the legal status of an invitee or licensee to whom a duty of care is owed.

3. Assume responsibility for or incur liability for any injury to person or property caused by an act of omission of such persons.

I.C. § 36-1604(d).

**MEMORANDUM DECISION AND ORDER - 20**

The Idaho RUS defines "owner" as "the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises." I.C. § 36-1604(b)(3). There is no real dispute in this case that the United States is an "owner" of the land in question within the meaning of the statute.[8] Plaintiffs challenge, however, the proposition that Fremont County is an "owner" within the meaning of the statute.

Fremont County argues that it was both an occupant and one of the entities in control of the premises, and was therefore an "owner" entitled to immunity under the statute. In support of its position, Fremont County directs the Court to the Cost-Share Agreement between the County and the Forest Service, which describes the parameters of the County's occupancy of the national forest and provides the County with control of the snowmobile trails to establish an operate the trail system. The Cost-Share Agreement provides that "[t]he County has an interest in maintaining groomed snowmobile trail systems . . . [and] benefits by providing services to recreational users." (Dkt. 81 at 8.) The agreement further provides that the County shall "[a]ccept the responsibility for the snowmobile trail grooming program in State Designated Areas #22a and 22b" and "[g]room, utilizing trained personnel, all mutually agreed upon trails, including those on

---

[8]   In their response brief in opposition to Defendants' motions for summary judgment, Plaintiffs state that, "[p]resumably, the United States of America is the possessor of a fee interest in the snowmobile trails in the [Caribou-Targhee National Forest,]" but suggests that the United States has offered no proof of such ownership. (Dkt. 98 at 13.) The Court disagrees; as the United States points out, the record in this case, including Plaintiffs' Second Amended Complaint, makes clear that the snowmobile trail at issue is located on federal land.

National Forest System lands." (*Id.* at 9.) Based on these responsibilities, the County argues that its presence in the forest, coupled with responsibilities concerning the maintenance of the snowmobile trails, made it an occupant or entity in control of the relevant land for the purpose of the Idaho RUS.

In response, Plaintiffs argue that "occupant" should be defined as a person or entity with the authority to grant or deny access to the land for recreational purposes. (Dkt. 98 at 11.) The County does not dispute that it lacks the authority to exclude people from the national forest or the snowmobile trail system. (Dkt. 105 at 3.)

The Court finds Plaintiffs' interpretation of "owner" more in line with the language and purpose of the Idaho RUS. First, the purpose of the statute is to encourage land owners to make their land available to the public. Here, the County admits that it could neither grant admittance nor deny access to use of the snowmobile trails. In other words, defining the County as an "owner" entitled to immunity would not further the purpose of the statute because it was not the County's decision to open the land to the public.

Second, the definition in the statute suggests that, to be considered an "owner," the person or entity must have the authority to permit or exclude individuals from the land. The statute defines "owner" as "the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises." I.C. § 36-1604(b)(3). Looking at the above definition, the Court notes that possessors of fee interests, tenants, and lessees all ordinarily have the power to exclude persons from the land within their possession.

Moreover, Black's Law Dictionary defines "occupant" as "[o]ne who has possessory rights in, or control over, certain property or premises." Black's Law Dictionary 1106 (7th ed.1999.) This too suggests the right to exclude and is in line with the other examples of "owner" listed in the statute.

The only example of an "owner" that does not necessarily suggest the authority to exclude is "person in control of the premises." However, even assuming the term "control" does not imply the authority to exclude, given the other examples listed in the statute, the Court finds that, to be an "owner" within the meaning of the Idaho RUS, the person or entity must have the authority to exclude the public from the premises. *See Nelson v. City of Rupert*, 911 P.2d 1111, 1113 (Idaho 1996) (stating that, when a city leased property from private land owner, they "stepp[ed] into the shoes of [the owner] as one 'in control of the premises'").[9]

In sum, the Court concludes that the United States is an "owner" within the meaning of the Idaho RUS and that Fremont County is not. Because Fremont County is not an "owner" within the meaning of the Idaho RUS, it is not entitled to immunity under the statute. The Court must determine, however, whether the other conditions of

---

[9] At the hearing on the motions, Fremont County raised the alternative argument that, if it is not an "owner" within the meaning of the statute, it necessarily follows that it should not be held to have any duties associated with maintenance of the trail system. This argument is a *non sequitur*. As Plaintiffs point out, if a private contractor entered into an agreement with the Forest Service to groom the trails, there would be no question as to its status as a non-owner under the Idaho RUS but it might still be subject to liability for negligent work.

immunity under the Idaho RUS are satisfied as to the United States. Those conditions are discussed below.

**(2)**      ***Whether Mr. Albertson was permitted to use the snowmobile trails "without charge"***

To be entitled to immunity under the Idaho RUS, the owner must have permitted the person to enter the property "without charge." The United States and Fremont County argue that they did not charge Mr. Albertson, or any other person, for admittance onto the snowmobile trails. Because it already has been determined that Fremont County is not an owner, regardless of whether Mr. Albertson was charged a fee to use the property, the County cannot be shielded from liability by the RUS. The United States, however, must establish that Mr. Albertson was not charged a fee to be entitled to immunity under the statute. For the reasons set forth below, the Court finds that Mr. Albertson was not charged a fee to enter the property.

It is undisputed that the Idaho Code requires every snowmobile to be numbered before it is used anywhere in the state of Idaho. Idaho Code § 67-7102. The owner of the snowmobile must file an application for a number and pay a fee of $31.00. Idaho Code § 67-7103. With regard to out-of-state snowmobilers, Idaho Code § 67-7104 provides that "the owner of a nonresident, noncommercial snowmobile shall not be required to comply with the registration requirements of the state of Idaho, but shall be required to obtain a nonresident snowmobile user certificate." Out-of-state snowmobilers must pay a $31.00 fee, and it is undisputed that Mr. Albertson paid such a fee in this case. It also is

undisputed that, at the time of these payments, the snowmobile owner designates the specific county snowmobile program in Idaho that will receive at least 85% of the fee.

Plaintiffs ague that the numbering fee described above constitutes a "charge" within the meaning of the Idaho RUS and that, because Mr. Albertson was "charged" to use his snowmobile in the State of Idaho, the United States is not immune from liability under the statute. The United States argues that the snowmobile registration fee does not constitute a charge for purposes of the Recreational Use Statute.

The Recreational Use Statute does not define the term "charge." However, Idaho courts have addressed this issue. In *Allen v. State*, 36 P.3d 1275 (Idaho 2001), a father and son went to an Idaho state park to fish.  While fishing, the child fell into the lake and impaled his leg on a steel fence post under the water. *Id*. at 1276. It was undisputed that the father and son paid a two dollar vehicle entrance fee to use the park. *Id*. Regardless, the state trial court held that the state was immune from liability under the Idaho RUS. The Idaho Supreme Court reversed, holding that the two dollar entrance fee constituted a charge within the meaning of the Recreational Use Statute and that the State could not, therefore, assert immunity under that statute.

In *Corey v. State*, 703 P.2d 685 (Idaho 1985), a snowmobiler sued the state for damages arising from a snowmobile accident that occurred on State ground. In that case the snowmobiler was injured when he struck a cable strung across a path in an Idaho state park. The plaintiff argued that the State was negligent in placing the cable across the path. The issue before the Idaho Supreme Court in that case was whether the State's conduct

was "intentional or wilful," providing an exception to immunity under the Idaho RUS. Although the Idaho Supreme Court did not address the issue of whether the plaintiff was charged to use the park, the issue was addressed by the trial court. At the trial court level, the plaintiff in *Corey* made the same argument asserted in this case – that the snowmobile registration fee constituted a charge under the RUS. The trial court disagreed, and in a Memorandum Opinion,[10] the court stated:

> [I]t is contended that the statutorily required $5.00 snowmobile numbering fee constitutes such a charge since a part of such money is required to be paid to the State Treasurer.
>
> This argument is tenuous at best. It ignores the fact that the scheme for numbering snowmobiles has nothing at all to do with the land upon which such snowmobile might be operated. . . . There can be no doubt that the legislature intended the term "charge" to mean a consideration given in return for the express and direct privilege of being allowed to utilize the property, in money or other thing of value.

(*Corey v State*, Case No. 57158 (First Dist., Kootnai County, Mem. Opinion, May 23, 1984) attached to the Declaration of Blake Hall, Exhibit I, Dkt. 86-10.)

The United States directs the Court to other federal and state cases interpreting state recreational use statutes like the one at issue in this case in which the courts have held a "charge" must be for entry onto the land. *See U.S. v. Howard*, 181 F.3d 1064, 1068 (9th Cir. 1999) (applying Hawaii statute); *Jones v. U.S.*, 693 F.2d 1299, 1300 (9th Cir.

---

[10] The trial court's opinion in the Corey case was submitted by Fremont County and attached to the Affidavit of Blake Hall as Exhibit I. (Dkt. 86-10.)

1982) (fee charged by government concessionaire for use of an inner tube not a fee for use of recreational facilities under Washington State recreational use statute); *Zuk v. U.S.*, 698 F. Supp. 1577 (S.D. Fla. 1988); *Miller v. Weitzen*, 35 Cal. Rptr. 3d 73 (Cal. Ct. App. 2005). These cases provide persuasive authority that the snowmobile registration fee should not be considered a "charge" within the meaning of the Idaho RUS.

Plaintiffs argue that, because the registration fees are directed in part to specific counties and are used by both the United States and Fremont County in connection with maintaining the snowmobile trail system, the fees should be considered a "charge" within the meaning of the statute. This argument is belied by the Idaho Supreme Court's statement in *Allen v. State*, in which the court stated that "[w]e find no provision in the recreational use act . . . that conditions the landowner's protection from liability upon the use to which the landowner puts the money received from a recreational user . . . . The fact that a portion of the fee charged may have been intended by the State for the upkeep of the Park, its roads, or the parking lot, is irrelevant." 36 P.3d at 1277.

In sum, the Court concludes that Mr. Albertson was not charged a fee to use the snowmobile trail system in the Caribou-Targhee National Forest. Because the United States has established all of the conditions for immunity contained in the Idaho RUS, it is immune from liability under the statute unless, as discussed below, it engaged in wilful and wanton conduct.

### (3) *Wilful and Wanton Conduct Exception to Immunity*

The Idaho Supreme Court has held that a landowner whose liability has been

limited by the Idaho RUS is only liable "for wilful or wanton conduct that causes the injury of a person using the owner's land for recreational purposes." *Jacobsen v. City of Rathdrum*, 115 Idaho 266, 269 (1988). The Court has concluded that the United States is an "owner" that allowed Mr. Albertson to enter its land for recreational purposes without charge. Therefore, the United States is entitled to immunity under the Idaho Recreational Use Statute unless it engaged in wilful or wanton conduct.

In *Jacobsen*, the Idaho Supreme Court defined wilful and wanton conduct using the 1985 version of Idaho Jury Instruction 225, which provided:

> Wilful and wanton misconduct is present if the defendant intentionally does or fails to do an act, knowing or having a reason to know facts which would lead a reasonable man to realize that his conduct not only creates unreasonable risk of harm to another, but involves a high degree of probability that such hard would result.

766 P.2d at 740. The court in *Jacobsen* also cited the following language with approval: "The most critical element of wantonness is knowledge, and that element need not be shown by direct evidence; rather, it may be made to appear by showing circumstances from which the fact of knowledge is a legitimate inference." *Id*. at 742 (quoting *Johnson v. Sunshine Mining Co., Inc.*, 684 P.2d 268, 275 (Idaho 1984)).

The United States argues that there is no evidence that it had actual knowledge of any problems with the signs on the Chick Creek Trail or that it wilfully ignored or consciously failed to address them. In support of its argument, the United States indicates that, prior to Mr. Albertson's accident, there were no complaints about the trail signage

and that there had been no previous injuries or deaths related to inadequate signage. Plaintiffs argue that the evidence in the record is sufficient for a jury to draw the inference that the United States acted wilfully and wantonly, and is not entitled to immunity under the Idaho Recreational Use Statute.

Plaintiffs argue that the pine tree obscuring the stop sign in front of Highway 20 was obvious, and that the deliberate failure to remove the obstruction created an unreasonable risk of harm. Plaintiffs also submit the expert opinion of Kim Raap that the Defendants knew or should have known of the inherent risks and dangers where trails and highways intersect. According to Mr. Raap's report, Defendants "had reason to know and should have realized that failure to properly and diligently install, monitor and maintain proper signage at the intersection (and on the approach to the intersection) of Chick Creek Snowmobile Trail and U.S. Highway 20 on and prior to February 1, 2009 would create a highly dangerous situation with a high probability of serious injury or death to those who use the trails." (Raap Report, Dkt. 98-25.) Moreover, the Sign Coordinator for the Caribou-Targhee National Forest, Tom Brown, testified in a deposition that "a crossing of this nature with a highway would be considered a major hazard for the trail user." (Dkt. 98-43 at 12.)

Plaintiffs also direct the Court to a statement by the Idaho Supreme Court that the question of whether conduct is wilful or wanton is "a question of fact for the jury to determine from all the evidence." *See O'Guin v. Bingham County*, 72 P.2d 849, 854 (Idaho 2003).

**MEMORANDUM DECISION AND ORDER - 29**

The United States argues that an examination of the record reveals that approximately twice a week during the snowmobile season prior to the accident, the trial groomers employed by Fremont County monitored and groomed Chick Creek Trail, and no problems were reported. The United States also indicates that Chick Creek Trail had been groomed and safely operated for years prior to the accident. Moreover, Fremont County notes that, the day before the accident, on January 31, 2009, there was an event called the Coed Rally snowmobile race which was sponsored by the Island Park Chamber of Commerce with part of the race route on Chick Creek trial passing through Junction 57. Based on this fact, and others contained in the record, the United States argues that there is simply no evidence that it, or Fremont County, was on notice that there was a problem with the signs on Chick Creek Trail.

Based upon the materials in the record, the Court finds that there are disputed material facts concerning whether the United States knew or should have known that the intersection of Chick Creek Trail and Highway 20 was unreasonably dangerous and involved a high degree of probability that injury would result. Plaintiffs have presented circumstantial evidence that the Highway Crossing Ahead sign had been knocked down and buried under the snow well before the day of Mr. Albertson's accident. Plaintiffs have presented evidence that the Stop sign at the intersection was obscured by vegetation and that the obstruction was, or should have been, apparent to those responsible for maintaining the trail. Plaintiffs have presented deposition testimony indicating that the Forest Service knew that the type of intersection involved in this case created a dangerous

hazard and an expert report supporting the argument that the Forest Service's actions, or omissions, were wilful and wanton. These disputed facts preclude summary judgment in favor of the United States on the issue of whether its actions were wilful and wanton.

In sum, the Court concludes that Fremont County is not entitled to immunity under the Idaho RUS and its motion for summary judgment will be denied on that issue. The Court further concludes that the United States has satisfied all the conditions of the Idaho RUS, but material disputed facts exist concerning whether the United States engaged in wilful and wanton conduct. Thus, the United States motion for summary judgment on this issue likewise will be denied.

## C. *Plaintiffs' Negligence Claims*

Plaintiffs' Second Amended Complaint asserts causes of action for negligence and negligence per se against the United States and Fremont County. (Dkt. 43.) Plaintiffs' First Cause of Action alleges that Fremont County was negligent per se for failing to comply with the Manual on Uniform Traffic Control Devices ("MUTCD"). Plaintiffs' Second and Third Causes of Action allege negligence per se against Fremont County and the United States for their alleged failure to comply with the provisions of two documents promulgated by the Forest Service: (1) the Forest Service Manual 7100; and (2) the Standards for Forest Service Signs and Posters, EM-7100-15. Plaintiffs' Fourth and Fifth Causes of Action allege general negligence against Fremont County and the United States – alleging that Fremont County and the United States "assumed further duties regarding the installation, operation, inspection, maintenance and replacement of signage on and

adjacent to the groomed snowmobile trail system in the national Forest," and that both Defendants failed to exercise reasonable care in implementing these assumed duties.

Fremont County and the United States both move for summary judgment on all of Plaintiffs' negligence claims. After reviewing the applicable legal authorities, and for the reasons set forth below, the Court finds that neither Defendant may be held liable for negligence per se for failing to comply with the MUTCD or the above-mentioned federal guidelines. Concerning the United States, it has not waived sovereign immunity as to the federal guidelines; its liability is defined by state law as dictated by the Federal Tort Claims Act, 28 U.S.C. § 1346. In this case, the Idaho RUS (and the case law interpreting that statute) establishes a duty applicable to the United States and provides that the United States will be immune from liability unless it engaged in wilful and wanton conduct.

As to Fremont County, Plaintiffs have not demonstrated that the County's alleged violations of the MUTCD or the federal signage polices may act as the basis for a claim of negligence per se. While the MUTCD and the federal guidelines may very well set the standard of care applicable to Fremont County's alleged assumed duties, they do not create legal duties in themselves which would subject the County to a finding of negligence per se. Thus, Defendants' motions for summary judgment on Plaintiffs' negligence claims will be granted as to Plaintiffs' negligence per se claims and denied as to Plaintiffs' general negligence claims.

(1)    *Elements of Negligence and Negligence Per Se*

To establish a claim for negligence under Idaho law, the plaintiff must demonstrate

the following four elements: "(1) a duty, recognized by law, requiring the defendant to conform to a certain standard of conduct; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual loss or damage." *Obendorf v. Terra Hug Spray Co., Inc.*, 188 P.3d 834, 840 (Idaho 2008) (citing *O'Guin v. Bingham County*, 122 P.3d 308, 311 (Idaho 2005)). Here, the parties' arguments focus on the first element, and, in particular, the *source* of Defendants' alleged duties.

"[I]n Idaho, it is well established that statutes and administrative regulations may define the applicable standard of care owed, and that violations of such statutes and regulations may constitute negligence *per se.*" *Sanchez v. Galey*, 733 P.2d 1234, 1242 (Idaho 1986). "The effect of establishing negligence *per se* through violation of a statute is to conclusively establish the first two elements of a cause of action in negligence." *Slade v. Smith's Management Corp.*, 808 P.2d 401, 408 (Idaho 1991). "Negligence *per se* lessens the plaintiff's burden only on the issue of the actor's departure from the standard of conduct required of a reasonable man." *Ahles v. Tabor*, 34 P.3d 1076, 1078 (Idaho 2001) (internal quotation omitted). "Thus, the elements of duty and breach are taken away from the jury." *Ahles*, 34 P.3d at 1078 (internal quotation omitted).

"In order to replace a common law duty of care with a duty of care from a statute or regulation, the following elements must be met: (1) the statute or regulation must clearly define the required standard of conduct; (2) the statute or regulation must have been intended to prevent the type of harm the defendant's act or omission caused; (3) the

plaintiff must be a member of the class of persons the statute or regulation was designed to protect; and (4) the violation must have been the proximate cause of the injury." *O'Guin*, 122 P.3d at 311. Because negligence per se establishes both duty and breach for the purposes of the negligence analysis, the party asserting the claim must demonstrate that the statute itself creates a legal duty applicable to the defendant.

Duties also may be voluntarily assumed. *Udy v. Custer County*, 34 P.3d 1069, 1072 (Idaho 2001) ("it is possible to create a duty where one previously did not exist."). "If one voluntarily undertakes to perform an act, having no prior duty to do so, the duty arises to perform the act in a non-negligent manner." *Featherston v. Allstate Ins. Co.*, 875 P.2d 937, 940 (Idaho 1994).

### (2) *Negligence claims against the United States*

Plaintiffs allege that the United States failed to follow the standards contained in various manuals applicable to the Forest Service and that this failure constituted negligence per se. Specifically, Plaintiffs direct the Court to the *Sign and Poster Guidelines for the Forest Service, EM-7100-15* ("Sign and Poster Guidelines"), and *Forest Service Manual 7100* ("FSM 7100").

FSM 7100 implements a sign and poster program throughout the national forests with the objective of providing information "for the safety, enjoyment and convenience of National Forest . . . visitors, users, cooperators and employees." (Dkt. 98-21 at 2.) Both manuals address "Trail Signing." For instance, Section 5.7 of the Sign and Poster Guidelines provides that, "[w]hen trails cross each other or roads, there is a potential for

accidents," and "[w]hen roads and trails cross, MUTCD and Forest Service standards shall be followed." (Dkt. 98-20 at 15.) The Court need not go into detail concerning the various standards contained in these manuals, but, the Court notes that the guidelines contain both mandatory and permissive language and dictate compliance with the MUTCD.

The United States argues that it cannot be held liable for violations of federal manuals, polices, or regulations, including the documents that Plaintiffs claim were not followed in this case. Specifically, the United States argues that, under the Federal Tort Claims Act ("FTCA"), the United States has not waived sovereign immunity for tort claims based on alleged violations of federal statutes, regulations or policies. In essence, the United States argues that the Court lacks subject matter jurisdiction to consider Plaintiffs' negligence per se claim.[11]

Under the FTCA, the United States waives sovereign immunity "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. 1346(b)(1). According to the Ninth Circuit "[t]o bring suit under the FTCA based on

---

[11] The United States did not raise this argument in its Answer as an affirmative defense or in its motion for summary judgment. It was raised for the first time in the United States' reply memorandum in support of its motion for summary judgment. Plaintiffs objected to the argument at the hearing on the motions and the Court ordered supplemental briefing on the issue of whether the Court may consider the argument. The issue has been fully briefed, the Court has determined that the United States has not waived the argument, and the Court will consider the argument as part of the United States' motion for summary judgment.

negligence per se, a duty must be identified, and this duty cannot spring from federal law." *Delta Savings Bank v. U.S.*, 265 F.3d 1017, 1026 (9th Cir. 2001). "The duty must arise from state statutory or decisional law, and must impose on the defendants a duty to refrain from committing the sort of wrong alleged." *Id*. Moreover, the Ninth Circuit has made clear that federal statutes and regulations "only become[] pertinent in an FTCA action when a state law duty is found to exist." *Delta Savings Bank*, 265 F.3d at 1026 (internal quotations omitted).

The Court finds the Ninth Circuit precedent cited above dispositive of this issue. Plaintiffs have failed to direct the Court to any duty arising under Idaho law mandating compliance with the federal guidelines at issue in this case and, as discussed above, the federal guidelines themselves cannot act as the source of the duty. Plaintiffs' negligence per se claim against the United States based upon the federal guidelines must be dismissed.

This conclusion, however, does not require the dismissal of Plaintiffs' general negligence claims against the United States. The Idaho RUS implicitly recognizes the common law duties associated with premises liability and alters those duties by providing immunity to owners who allow persons onto their property for recreational purposes without charge. As discussed in more detail above, this statutory immunity bars liability unless the owner engaged in wilful and wanton conduct. The question of whether the United States engaged in wilful and wanton conduct is one of fact that remains disputed in this case. The federal guidelines may be relevant to whether the United States engaged

in wilful and wanton conduct, but the guidelines themselves do not act as a source of any duty giving rise to a claim for negligence per se.

### (2)    *Negligence claims against Fremont County*

Plaintiffs claim that Fremont County's alleged failure to comply with the standards set forth in the MUTCD and the federal signage policies referenced above constituted negligence per se. Plaintiffs also raise a claim against Fremont County for ordinary negligence. Concerning Plaintiffs' negligence per se claim against Fremont County, for the reasons set forth below, the Court finds that, while the MUTCD and the federal signage policies may inform the standard of care relevant to the duty Fremont County owed to Mr. Albertson, the regulations do not in themselves create a duty that would give rise to negligence per se in this case. Plaintiffs' negligence per se claim against Fremont County therefore must be dismissed. Concerning Plaintiffs' ordinary negligence claim against the County, the Court finds that disputed material facts exist as to whether the County assumed a duty owed to Mr. Albertson and as to whether the County breached this duty. The existence of disputed material facts on these issues precludes summary judgment in the County's favor.

### (a)    *negligence per se*

Plaintiffs' First Cause of Action claims that Fremont County is liable for negligence per se for failing to comply with the requirements of the MUTCD. The MUTCD is published by the Federal Highway Administration and defines the standards used by road managers nationwide to install and maintain traffic control devices on public

streets and highways. 23 C.F.R. 655.603. Idaho law requires the Idaho Transportation

Board to adopt and apply the MUTCD to all highways within the state. Idaho Code § 49-

201. Idaho law also requires all local units of government to adopt and apply the MUTCD

to traffic control devices upon highways under their jurisdiction. Idaho Code § 49-209.

Similarly, the federal regulations make the MUTCD applicable to all federal lands,

including the national forests. 23 C.F.R. 655.603. And the application of the MUTCD to

roads and trails on land administered by the Forest Service is acknowledged in the Forest

Service's Signage Policies. Moreover, the Idaho Supreme Court has held that a violation

of a mandatory provision of the MUTCD may act as the basis for a claim of negligence

per se. *Curtis v. Canyon Hwy Dist. No. 4*, 831 P.2d 541, 552 (Idaho 1992).

Fremont County does not contest any of the above propositions, but argues that the

claim should fail as a matter of law. The Court agrees.

To establish a claim for negligence under Idaho law (regardless of whether the

claim is for general negligence or negligence per se), the plaintiff must demonstrate that a

duty existed, recognized by law, which required the defendant to conform to a certain

standard of conduct. *Obendorf*, 188 P.3d at 840. In the context of a claim for negligence

per se involving the violation of a statute or ordinance, the duty must arise via legislative

mandate. In other words, the statute or ordinance must require the defendant to comply

with the requirements of the statute or ordinance. The American Law Institute ("ALI")

has explained that the rationale for the common law theory of negligence per se is

institutional comity.  Restatement (Third) of Torts § 14 *cmt. c* (Tentative Draft No. 1,

2001). Indeed, "when the legislature has addressed the issue of what conduct is appropriate, the judgment of the legislature, as the authoritative representative of the community, takes precedence over the views of any one jury [or court.]" *Id.*

The key in this case, and the reason Plaintiffs' claim for negligence per se against Fremont County must be dismissed, is that the Idaho legislature has not mandated Fremont County's compliance with the standards set forth in the MUTCD with regards to the snowmobile trails in the Caribou-Targhee National Forest. As the ALI explains, "[a] statute [or other legislative enactment] that sets forth a norm that is seemingly pertinent in evaluating an actor's conduct may turn out not to be legally binding on the actor." Restatement (Third) of Torts § 14 (Tentative Draft No. 1, 2001). Moreover, the ALI points out that, when one of the issues in a case is whether a duty exists – rather than the usual negligence per se case, where duty is established by the statute itself – "the court should give appropriate weight to th[e] statutory violation as one relevant factor in determining whether [the defendant's] no-duty position remains proper[,]" but, although the statute or ordinance is relevant to the duty analysis, "the violation does not signify duty per se." *Id.*

Here, Plaintiffs have not directed the Court to any laws making the application of the MUTDC on the snowmobile trails within Fremont County mandatory. Plaintiffs direct the Court to Idaho Code § 49-201, which requires the Idaho Transportation Board to adopt and apply the MUTCD to all highways within the state, and Idaho Code § 49-209, which requires all local units of government to adopt and apply the MUTCD to traffic

control devices upon highways under their jurisdiction. Under these provisions, the MUTCD applies to "highways." "Highway" is defined in the Idaho Code as "the entire width between the boundary lines of every way publicly maintained when any part is open to the use of the public for vehicular travel, with jurisdiction extending to the adjacent property line, including sidewalks, shoulders, berms and rights-of-way not intended for motorized traffic." Idaho Code § 49-109. Here, Plaintiffs allege that Fremont County breached a duty by failing to properly maintain the snowmobile trail leading up to the highway. In other words, the duty alleged by Plaintiffs does not directly correspond with the duty set forth in the Idaho Code. This is not to say that Fremont County did not assume a duty to maintain the approach to the highway or that the MUTCD does not inform the relevant standard of care in this case. It does mean, however, that Plaintiffs may not raise a claim for negligence per se based upon the MUTCD.

Based upon similar reasoning, the Court holds that Fremont County is entitled to summary judgment on Plaintiffs' negligence per se claims based upon the alleged failure to comply with the standards set forth in the federal signage policies. Nothing in the federal signage policies mandated Fremont County's compliance with the standards set forth in those guidelines. In the absence of a mandate to comply with a statute or regulation there can be no claim for negligence per se for its violation. Again, this does not mean that the federal signage policies may not inform the standard of care of a duty assumed by the County to maintain the snowmobile trails in a reasonably safe condition, but it does preclude a claim under the theory of negligence per se.

**MEMORANDUM DECISION AND ORDER - 40**

(b)    *ordinary negligence*

In addition to their claims for negligence per se, Plaintiffs' complaint alleges that Fremont County "*assumed* further duties regarding the installation, operation, inspection, maintenance and replacement of signange on and adjacent to the groomed snowmobile trail system in the National Forest . . . protecting the safety of all who use the snowmobile trail system, including Jimmy Albertson." (Pl.s' Second Am. Compl. ¶ 60) (emphasis added).

Fremont County moves for summary judgment on Plaintiffs' ordinary negligence claim on three grounds: (1) it is immune under the Idaho RUS; (2) it is not the party responsible for maintaining the signs and approach to the intersection where Mr. Albertson sustained his fatal injuries; and (3) Mr. Albertson's death was not foreseeable. Concerning the first argument, the Court concluded above that Fremont County is not entitled to immunity under the Idaho RUS because it is not an "owner" of the property where Mr. Albertson was injured within the meaning of the statute. As to the second and third arguments, for the reasons below, the Court concludes that Fremont County has not demonstrated that it is entitled to judgment as a matter of law on Plaintiffs' negligence claim.

Fremont County argues that, under the Idaho Code, the Idaho Department of Transportation (and by extension the State) is the entity responsible for placement of

signs, maintenance of signs, and maintenance of approaches to state highways.[12] In support of this argument, Fremont County directs the Court to the Idaho Supreme Court's opinion in *Roberts v. Transportation Department*, 827 P.2d 1178 (Idaho 1991). In that case, the plaintiff brought an action against the Idaho Department of Transportation, seeking to recover for injuries she suffered and for the death of her husband in a collision at an intersection between a state highway and a county road. The trial court granted the department's motion for summary judgment, finding that it did not owe the duties the plaintiff alleged had been breached. On appeal, the department argued that it was relieved of any duty owed to the plaintiff when the county had accepted exclusive responsibility for placing the necessary signs and performing the necessary maintenance on the roads within the county's jurisdiction. The Idaho Supreme Court disagreed, holding that, under the Idaho Code, the department had an express statutory duty with respect to erecting and maintaining signs at its highways' intersections. The court stated that, where the state "legislature enacts a statute requiring that an administrative agency carry out specific functions, *i.e.*, furnish, erect and maintain signs on side highways, that agency cannot validly subvert the legislation by promulgating contradictory rules." 827 P.2d at 1183.

Fremont County argues that the holding in *Roberts* "has definitively established that the State is responsible for placement and maintenance of signs along State

---

[12] *See* Idaho Code §§ 40-310 and 40-201 (charging the State with the specific duties concerning the improvement and maintenance of state highways and highway signs).

**MEMORANDUM DECISION AND ORDER - 42**

Highways, and for maintenance of approaches to State Highways, even if the signs or approaches are not located within the State highway right-of-way." (Dkt. 80-2 at 14.) The Court disagrees with Fremont County's characterization of the holding in *Roberts*. In *Roberts*, the Idaho Supreme Court held that the State cannot escape liability by passing statutorily required duties on to another entity. *Roberts* does not stand for the proposition that a county may not *assume* duties shared by the State. Whether Fremont County did assume the alleged duties in this case is disputed.

Fremont County cites a Memorandum of Understanding from 1985 between the Forest Service and the State of Idaho, which, among other things, provides that "the STATE will install and maintain all traffic control (regulating and warning), guide, information, route designation, and other traffic signing within right-of-way, including necessary signs at intersections of FOREST SERVICE and other public road intersections." (Dkt. 98-22).

In response, Plaintiffs argue that, regardless of the State's responsibilities, Fremont County had assumed the duty to maintain and operate the snowmobile trail system within its jurisdiction in a reasonably safe condition pursuant to various agreements made with the Forest Service, including the Cost-Share Agreement and the Annual Operating Plan. Both of the above documents assign certain responsibilities to Fremont County concerning the operation and maintenance of the snowmobile trail system, including the responsibilities to "[a]ssist the Forest Service with trail maintenance, as necessary, to keep the snowmobile trails open and safe[,]" and to "mark trails, install sign[s] on trails

and trailheads as necessary and as designated in the attached Sign Plan." (Dkt. 98-13.)

Plaintiffs have also submitted the deposition testimony from a Forest Service employee stating that the "primary responsibility of signing the trails is Fremont County's." (Davis Dep. 37:11, Dkt. 98-38 at 6.) Plaintiffs also cite discovery responses from the Idaho Department of Transportation produced in connection with the state court companion case and in which the State represents the following:

(1) ITD did not install the stop sign that was in place on the east side of U.S. Highway 20;

(2) The stop sign was 24 inches in width and height, on an untreated port; and installed at a height inconsistent with ITD sign standards and practices;

(3) The stop sign had a sticker in the left front surface, consistent with stop signs used by the Forest Service and Fremont County;

(4) "The tree maintenance/trimming/removal was undertaken by employees of Fremont County on the afternoon following the accident;"

(5) ITD had no involvement in the signage of the snowmobile trails and no agreement concerning signage involving the Fremont County Snowmobile Program. (Idaho Transportation Department's Answers to Plaintiff's First Set of Discovery Requests, Dkt. 98-28.)

Based on the above, the Court finds that disputed material facts exist concerning the issue of whether Fremont County assumed the responsibility to maintain the section of the trail and signs leading up to Highway 20. The material disputed facts preclude

**MEMORANDUM DECISION AND ORDER - 44**

summary judgment on this issue.

Finally, concerning Fremont County's argument that Mr. Albertson's death was not foreseeable, Plaintiffs have presented testimony from Tom Brown, the Sign Coordinator for the Caribou-Targhee National Forest, stating that "a crossing of this nature with a highway would be considered a major hazard for the trail user." (Dkt. 98-43 at 12.) Plaintiffs have also presented deposition testimony from employees of the County and the Forest Service acknowledging that trail signs become damaged for various reasons and frequently need to be replaced. (Brown Dep. 127:20-128:10; Cikaitoga Dep. 207:20-209:19.) These facts preclude summary judgment on this issue.

## ORDER

Based on the foregoing, the Court being otherwise fully advised in the premises, IT IS HEREBY ORDERED that:

1.      Fremont County's Motion for Summary Judgment (Dkt. 80) is GRANTED IN PART AND DENIED IN PART. Fremont County's motion is granted with respect to Plaintiffs' claim for negligence per se and denied as to Plaintiffs' claim for ordinary negligence.

2.      The United States of America's Motion for Summary Judgment (Dkt. 88) is GRANTED IN PART AND DENIED IN PART. The United States' motion is granted as to Plaintiffs' claim for negligence per se and denied as to Plaintiffs' claim for ordinary negligence. The United States has satisfied all of the conditions for immunity under the Idaho Recreational Use Statute, Idaho Code § 36-1604. However, such immunity is

subject to an exception, and the Court has determined that disputed material facts exist as to the question of whether the United States engaged in wilful and wanton conduct, which would preclude immunity under the Idaho Code, and Plaintiffs may present evidence concerning that issue at trial.

3.    Fremont County's Motion to Strike, (Dkt. 102), is DENIED.

4.    The United States' Motion & Memorandum to Strike Portions of William L. Mauk's Declaration (Dkt. 106) is DENIED.

DATED: December 2, 2011

Honorable Candy W. Dale
Chief United States Magistrate Judge